**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | ) | |
| GEORGE KERSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-2155 (GEB-DEA) |
| | ) | |
| BECTON DICKINSON AND CO., | ) | |
| ESTATE OF JOSEPH R. PARADIS, | ) | |
| CAROL PARADIS, AND DEAN B. BELL, | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motions for summary judgment of

Defendants Becton Dickinson and Company ("Becton Dickinson" or "BD") (Doc. No. 22) and

Dean B. Bell, Esq. ("Bell") (Doc. No. 24.)  These motions are unopposed by Plaintiff George

Kersey ("plaintiff") because he simply asserts that "they are without merit."  Letter from Plaintiff

to Hon. Joseph A. Greenaway (Dec. 2, 2009) (Doc. No. 29-4).  Plaintiff then filed his own cross

motion for summary judgment (Doc. No. 29) which was properly opposed by defendants.

Finally, defendants Bell and Becton Dickinson have separately field motions for frivolous

litigation sanctions against plaintiff.  (Doc. Nos. 25, 28.)  The Court has considered the parties

submissions and decided the matter without oral argument pursuant to Federal Rule of Civil

Procedure 78.  For the reasons that follow, the Court will grant Becton Dickinson's motion for

summary judgment, grant Bell's motion for summary judgment, deny Kersey's motion for summary judgment, and grant the motions for sanctions.

## I.    BACKGROUND

This case began on May 2, 2008, when *pro se* plaintiff George Kersey filed a complaint against Becton Dickinson, the Estate of Joseph R. Paradis, Carol Paradis,[1] and Dean B. Bell. (Doc. No. 1.) The complaint alleges that Kersey is a third party beneficiary of a contract between Becton Dickinson and the Estate of Joseph R. Paradis, of which Carol Paradis is the executrix. (Compl. at ¶¶ 3, 4; Doc. No. 1).  Plaintiff then makes a one paragraph statement that "Dean Ball [sic] has made and published an [sic] attacks on my personal professional character and standing . . ." (*Id.* at ¶ 5.)  Plaintiff then argues that he is owed money for previous legal work he did when he was acting as a patent prosecution attorney for John Paradis.  (*Id.* at ¶ 6.)

The contract dispute arises from an agreement between Mr. Paradis and plaintiff wherein plaintiff would prepare and prosecute patents for Mr. Paradis, and in return would receive 10% of any licensing revenue derived from those patents.  (BD's Br. at 1; Doc. No.22.) Upon Mr. Paradis' death, the payments ceased.  Plaintiff alleges that he is due payments from the Estate of Paradis for the third and fourth quarter of 2007 and the first quarter of 2008.  (Compl. at ¶ 3; Doc. No. 1) Plaintiff further alleges in the complaint that since the Paradis Estate had not paid him his share of the patent royalties, he is entitled to receive it directly from Becton Dickinson, the company paying royalties to the Paradis Estate for use of the patents.  (*Id.* at ¶ 4.)  On December 4, 2008, the Estate of Joseph Paradis settled with plaintiff, stating that "all claims

---

[1] Both the Estate of Joseph R. Paradis and Carol Paradis were terminated on December 4, 2008.  (Doc. No. 16.)

between Kersey and the Paradis Defendants have been 'amicably resolved.'" (Doc. No. 16.)

Plaintiff also pursues defamation claims against Dean B. Bell, Esq., the patent attorney that Carol Paradis hired to replace plaintiff.  (Compl. at ¶5; Doc. No. 1.)  Plaintiff alleges that Mr. Bell defamed him by sending a letter dated October 18, 2007, to him and copying Carol Paradis on the correspondence.  The pertinent parts of the letter read as follows:

Dear Mr. Kersey:

Sometime back you and I had some communication concerning intellectual actual [sic] property matters for Joe Paradis.  I have now been retained by Carol Paradis to represent her interests in connection with various patents which she inherited from Joe.  Several serious problems have arisen with regard to some of those patents and there have, additionally, been some issues regarding the fact that those patents have not been transferred to Carol's name.  I am also aware of your problems with regard to your license to practice law.

Initially, and potentially most serious, it appears that you allowed five patents to expire due to non-payment of maintenance fees. . . . As a direct result of the fact that the maintenance fees on these patents were not paid, and because they expired as a result, the potential for sale of these patents was lost.  That represents a very serious matter.  It appears that those patents can be reinstated and Ms. Paradis intends to make sure that they are in fact reinstated.  You will be responsible for the cost of that reinstatement.

Ms. Paradis also needs all of the documentation pertaining to the application, number and status of patents for the Swabable One Way Valve, the Needless Vial Access Swabable System, and Safety Shield Needle System.  That information needs to be provided immediately.  Additionally, please provide the documentation indicating that the following patents and patent applications have been properly assigned by the United States Patent and Trademark Office to Carol Paradis: [list of patent numbers and applications].  With regard to each of these patents please provide the name of the person who has had possession of all of the files and historical data and correspondence relating to the affairs of Joseph R. Paradis and his business entities as they relate to patents, patent litigation, patent applications, and any action or communication with you.  If you have that documentation, please advise.  We are formally requesting copies of everything relative to these matters.

Lastly, inasmuch as it appears that you are no longer licensed to practice

3

law, and as such, will no longer be able to fulfill your responsibilities under your agreement with Mr. Paradis, the responsibilities for maintaining and monitoring these patents and Patent applications will be transferred to a new attorney. Once all the patents are reinstated, the financial impact of your failure will be assessed and a decision made as to how to proceed. Any sums which may be owed to you under your agreement with Mr. Paradis will be offset against costs incurred in reinstating the various patents and related matters. If the patents, once reinstated, can be sold as originally contemplated, that will be taken into consideration in connection with Ms. Paradis' decisions as to how to proceed in this matter. If this sale is forever lost as a result of the fact that the patents expired, you will be held responsible for the damages. . . .

Letter from Dean Bell to George Kersey (Aug. 16, 2007),[2] Attached as Exhibit K1 to Kersey's Br. (Doc. No. 29.) The statements regarding Mr. Kersey's ability to practice law stem from his disbarment in the states of New Hampshire and Massachusetts, with reciprocal discipline in New Jersey and New York in the form of public reprimand and censure. (Tallmadge Aff, Ex. D, E, F, G, H.)

In response to the above-referenced letter demanding the return of Ms. Paradis' patent files, plaintiff demanded funds allegedly due to him before turning the files over to Ms. Paradis. (Bell's Br. at 2; Doc. No. 24.) Mr. Bell forwarded this letter to the New York Supreme Court, Appellate Division, Committee on Professional Standards, and plaintiff later contended that this conduct defamed him.

## II.     DISCUSSION

### A.     Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as

_____

[2] It is important to note that this letter was sent several months before the specific defamatory statement in the complaint, which was allegedly sent on October 18, 2007. However, because the complaint mentions that multiple defamatory statements were made and published, it must be assumed that this letter also falls within the realm of paragraph 5 of the complaint.

to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.,

Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist,

the court must view the underlying facts and draw all reasonable inferences in favor of the

non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*,

811 F.2d 225, 231 (3d Cir. 1987).

      **B.**     **Application**

        *1.*    *Becton Dickinson's Motion for Summary Judgment*

      Becton Dickinson's motion is unopposed except for plaintiff's statement that it is

"without merit." Letter from Plaintiff to Hon. Joseph A. Greenaway (Dec. 2, 2009) (Doc. No.

29-4). Becton Dickinson argues that plaintiff has received all monies due to him for payment of

services rendered as a part of the settlement with the Paradis Estate. (BD's Br. at 1; Doc. No.

22.) Therefore, Becton Dickinson argues, plaintiff would recover double the amount to which he

is entitled if liability is found under the contract. (*Id.* at 3.) The Court agrees with Becton

Dickinson. Whether plaintiff is a third-party beneficiary to the contract between Becton

Dickinson and Paradis is irrelevant. Plaintiff's claims to money allegedly due to him as payment

for legal services have already been settled by the Paradis Estate. Therefore, the Court will grant

Becton Dickinson's motion for summary judgment.

>    2.    *Dean E. Bell's Motion for Summary Judgment*

Bell moves for summary judgment, arguing that the letter referenced in the complaint and other communications later identified during discovery were not defamatory. (Bell's Br. at 10; Doc. No. 24.) The law of the state in which an alleged defamatory communication is published governs a claim for defamation. *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir. 1977). However, when there is no conflict between the laws of various states, the forum court applies the law of the forum state. *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007).

Here, the letters containing the statements at issue were forwarded to plaintiff at addresses in Massachusetts and New York, and copied to Carol Paradis in South Carolina. The act of sending the letters to plaintiff is not publication for the purposes of a defamation claim. *Feggans v. Billington*, 291 N.J. Super. 382, 390-91 (App. Div. 1996) (requiring that defamatory statement be published to third party other than plaintiff); *Lynch v. Toys-R-Us Delaware, Inc.*, 654 S.E.2d 541, 550 (S.C. App. 2007) (requiring "unprivileged communication to a third party"). Though plaintiff does not specifically state or particularly point out the statements that he alleges are defamatory nor does he state to whom they were published, the only reasonable recipients that the Court can deduce are Carol Paradis and the New York Supreme Court, Appellate Division, Committee on Professional Standards. As there is no conflict between the laws of New Jersey, South Carolina, and New York with respect to the basic elements of defamation,[3] this

---

[3] *See, e.g.*, *Feggans v. Billington*, 291 N.J. Super. 382, 390-91 (App. Div. 1996); *Holtzscheiter v. Thompson Newspapers, Inc.*, 332 S.C. 502, 518 (1998); *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999).

Court will apply the law of the forum state, New Jersey.

a.    *The Law of Defamation*

A defamatory statement is one that is false and injurious to the reputation of another or exposes another person to hatred, contempt, or ridicule.  *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988).  To prove defamation, a plaintiff must establish that the defendant: (1) made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was communicated to a person or persons other than the plaintiff; (4) which was false; and (5) fault.  *Feggans v. Billington*, 291 N.J. Super. 382, 390-91 (App. Div. 1996).

b.    *Application*

The Court concludes that the letters cited by plaintiff cannot be defamatory as a matter of law.  First, the statement that plaintiff was having "problems with regard to [his] license to practice law" is unquestionably true.  Plaintiff had been disbarred in Massachusetts in 2005 and New Hampshire in 2001, and the courts of New Jersey and New York publicly reprimanded him.[4]  (Tallmadge Aff., Ex. F, G.)  There can be no other reasonable interpretation of these events than problems with regard to one's law license.

Mr. Kersey states, in his own summary judgment motion,[5] that false statements were also

_____

    [4] The Court also notes that in addition to the disciplinary problems in the four states mentioned above, Mr. Kersey was also suspended from practicing before the United States Patent and Trademark Office for a period of six months in 2002.  *See* Official Gazette Notice, 17 December 2002 (George E. Kersey is suspended for violating USPTO Disciplinary Rules (DR) DR 10.23(c)(5) (being suspended from practice as an attorney on ethical grounds by any duly constituted authority of a State), DR 10.24 (willful refusal to report knowledge or evidence of his suspensions), and DR 10.23(c)(20) (knowing practice contrary to applicable Federal conflict of interest laws).)

    [5] The Court notes that Mr. Kersey's summary judgment motion is titled "Brief in opposition to the motion of Dean B. Bell for summary judgment and Kersey's brief in support of

made when Bell "wrongly accused Kersey of failing to pay maintenance fee [sic] and causing the loss of patents" as well as "wrongly accused Kersey of being subject to disciplinary action by the State of New York." (Kersey's Br. at 2-3; Doc. No. 29.) These statements, to the extent they exist in the letters previously identified, are also not false. Maintenance fees were not paid on the patents, and the State of New York reprimanded the plaintiff.

Further, the letters sent to plaintiff on behalf of Ms. Paradis are covered by the litigation privilege. The litigation privilege provides "jurors, witnesses, parties and their representatives absolute immunity with respect to 'statements, even those defamatory and malicious, made in the course of proceedings before a court of justice and having some relation thereto. . . .'" *Hawkins v. Harris*, 141 N.J. 207, 214 (1995) (internal quotations omitted). The litigation privilege extends to "preliminary conversations and interviews between a prospective witness and an attorney if they are in someway related to or connected with a pending or contemplated action." *Id.* at 216. The privilege extends beyond pending litigation to reach communications occurring preliminary to or in preparation for, proposed judicial and quasi-judicial proceedings. *Id.* at 216-18. The Court concludes that the communications to which plaintiff has generally referred in his pleadings and answers to interrogatories clearly relate to the prosecution of patents before the United States Patent and Trademark Office, a quasi-judicial procedure, and thus are protected by the litigation privilege.

Lastly, the Court concludes that the the November 1, 2007, correspondence to the New York Supreme Court, Appellate Division, Committee on Professional Standards is absolutely

---

his motion for summary judgment." However, it was filed on December 2, 2009 - two weeks after the November 23, 2009 deadline to oppose Bell's summary judgment motion.

privileged.  Complaints to administrative bodies related to the maintenance of ethical standards in the practice of law are absolutely privileged. *In re Hearing on Immunity for Ethics Complaints*, 96 N.J. 669, 673-75 (1984).  The correspondence in question communicates Ms. Paradis's grievance regarding plaintiff's failure to honor her request for the return of certain patent files.  As such, it is an absolutely privileged communication and cannot form the basis of a defamation cause of action.  For all these reasons, the Court will grant Mr. Bell's motion for summary judgment and deny Mr. Kersey's motion for summary judgment.

3.     *Motions for Sanctions*

Defendants Becton Dickinson and Dean M. Bell have also moved for frivolous litigation sanctions pursuant to Federal Rule of Civil Procedure 11.  (Doc. Nos.  25, 28.)  Federal Rule of Civil Procedure 11 was designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation . . . ." *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (internal quotations omitted).  Rule 11(b) provides that:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

FED. R. CIV. P. 11(b).  A court may impose sanctions for conduct prohibited by Rule 11(b).  Rule 11(c) provides that:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

FED. R. CIV. P.11(c).  The rule further provides that "[if] warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." FED. R. CIV. P. 11(c)(2).

The Third Circuit Court of Appeals has stated that for Rule 11 sanctions, the question is whether the conduct was "reasonable[] under the circumstances." *Ford Motor Co. v. Summit Motor Prods., Inc.*, *930 F.2d 277, 288 (3d Cir. 1991) (citations omitted)*.  *In this context,* reasonableness has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* (internal quotations omitted).  Furthermore, bad faith is not required. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (citation omitted).

Bell argues that Mr. Kersey should be sanctioned because, as an attorney, he is "obviously aware of the baseless nature of his claims" and "his intent to harass is clear from his actions in filing this suit, and in refusing to honor discovery obligations throughout the pendency of this matter."  (Bell's Br. at 2; Doc. No. 25.)  Bell notes that Mr. Kersey took no actions in this

10

suit aside from filing the complaint and serving initial disclosures under Rule 26 that fail to even identify the communications Mr. Kersey claims are defamatory.  The Court also notes that while the case was pending before Judge Greenaway, plaintiff failed to appear at a telephonic status conference on January 20, 2010.  (Doc. No. 38.)

Becton Dickinson similarly argues that plaintiff's claims against it are so baseless that sanctions are warranted.  (BD's Br. at 1; Doc. No. 28.)  Becton Dickinson argues that "[a] simple read of [Kersey's] own research would reveal to any first-year law student – let alone an experienced attorney such as Mr. Kersey – that he was not a third-party beneficiary under the License."  (*Id.*)  Becton Dickinson argues that plaintiff's attempts at double recovery have harassed it, caused unnecessary delay, and needlessly increased its costs of litigation.

The Court agrees with defendants that this conduct is sanctionable.  This memorandum opinion has explained the frivolous claims that plaintiff continues to pursue against Becton Dickinson and Mr. Bell, even though all monies that plaintiff sought from Becton Dickinson had already been paid and both the third party beneficiary claims and the defamation claims are poorly pled and not grounded in either "law or fact."  *Ford Motor Co.*, 930 F.2d at 289. Therefore, in addition to dismissing plaintiff's complaint with prejudice the Court will also award defendants their reasonable attorney fees and costs associated with defending this lawsuit.


III.    **CONCLUSION**

For the reasons stated herein, the Court will grant Becton Dickinson's motion for summary judgment and motion for sanctions, grant Mr. Bell's motion for summary judgment and motion for sanctions, and deny Mr. Kersey's motion for summary judgment.  An appropriate

11

form of order accompanies this memorandum opinion.


Dated: May 5, 2010



_____s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.